UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL J. McCLERNON,

                              Plaintiff,              05-CV-6257T

                    v.                                **DECISION**
                                                      **and ORDER**
BEAVER DAMS VOLUNTEER FIRE
DEPARTMENT, INC.,

                              Defendant.
_____


                         INTRODUCTION

     Plaintiff Michael J. McClernon, Sr., ("McClernon") a former
President of the Beaver Dams Volunteer Fire Department ("Beaver
Dams" or the "Fire Department" or "Department") brings this action
pursuant to 42 U.S.C. § 1983 claiming that his civil rights were
violated in connection with his suspension and expulsion from the
Department.   Specifically, McClernon contends that he was
retaliated against for exercising his right to freedom of speech
when he was voted out of the Department after having written a
letter to the United States Fire Administration complaining that
the Fire Department had not received a fair proportion of grant
money, and that other fire departments which had received grants
were unworthy of receiving such money either because they didn't
need the money or had misused grant money in the past.   McClernon
asserts that because he was exercising his right to speak freely on
a matter of public concern, his expulsion from the Fire Department

unlawfully violated his right to free speech as guaranteed by the First Amendment to the United States Constitution.

<u>BACKGROUND</u>

Plaintiff Michael McClernon, Sr., is a former member, President, and Chief of the Beaver Dams Fire Department. In October, 2003, he served as president of the Board of Directors of the Fire Department. On or about October 1, 2003, McClernon sent a letter via e-mail to the United States Fire Administration, a governmental agency, in which he complained that the Fire Department had not received adequate monetary grants from the federal government (hereinafter, the "McClernon letter"). Plaintiff copied the letter to United States Senators Schummer and Clinton, United States Representative Randy Kuhl, and Tim Hudson, the Department's Fire Chief. Specifically, McClernon wrote:

> Dear Sir,
>
> As we are aware of the overwhelming need for funding, I for one can not understand how a neighboring Fire Dept. with great means of funds available to them, can get a $348,000.00 grant for a Firetruck that they didn't need, {other than the need to showcase it} just because they didn't have this innovated [sic] piece of Equipment? {Pumper-tanker} also [sic] this Dept. is home to the State Fire Academy, and our Dept. is just a one-horse town out in the middle of nowhere, and we can't get a grant that would benefit several smaller Dept's. in our area. We are all small Dept's. and we rely heavily on each other, for equipment that none of us can afford. In 2001

I put in for 30 sets of turnout gear that was desperately needed for the safe outfitting of my Firefighters, and the City of Buffalo gets close to $250,000.00 for gym equipment.  Our Dept. can't afford a grant writer.  I've attended seminars on this issue.

I don't understand the fact that another neighboring Fire Dept. misappropriated their [sic] money last year, is under investigation, and still got another grant this year.  I don't wish to sound immature, But [sic] I feel that all of the Dept's that didn't get a Grant the last few years feel the same way.  I truly wish there was another way to appropriate these funds, other than a group of people looking at these applications, and from a distance, make [sic] a decision on someone's creative way of saying they need this, I wish it could be investigated by a panel to see if they actually need this money, or at least prioritize who gets the money.  Lets face it, there is quite a bit of creativity going on. I tried to be very honest to the fact that we needed this money. I been [sic] told by both these Dept's. I've referred to in this letter, The Beaver Dams Vol. Fire Co. Inc. does not have a village or a Town to pay its bills, we pay all of our bills, and as you know, costs go up each year, and with taxes increasing each year, we rely on getting Grants to help us update our abilities that we don't have money for.

I wish not to keep you from other duties, but I feel as President and also past Chief of our Dept. I needed to voice my opinion on this matter.  I await a reply that is not just your form letter you send to all Dept's. I wish to hear straight from the horses [sic] mouth what we need to do to be more competitive in these Proceedings.

Exhibit 2 to Plaintiff's Affidavit in Opposition to Defendant's

Motion for Summary Judgment.  Although the letter was not approved

by the Board of the Beaver Dams Fire Co., Inc., McClernon signed the letter as President of Beaver Dams Fire Company.[1]

In addition to its intended recipients, The McClernon letter found its way to the Chiefs of the Fire Departments that McClernon had referenced in the letter. Although McClernon had not specified the name of the fire department that had recently received funds for a truck that it "didn't need," it was widely known that the letter referred to the Montour Falls Fire Department. Similarly, it was known that the fire department that was believed to have "misappropriated funds" was the North Corning Volunteer Fire Department.

Upon receipt of the letter, the Chiefs of the two fire departments contacted the Beaver Dams Fire Company to express their displeasure with the accusations made against them by the President of a neighboring Fire Department. See Defendant's Statement of Undisputed Facts at ¶ 8. Thereafter, the Board of Directors of the Fire Company held a special meeting on October 21, 2003 to discuss how to handle the controversy that resulted from McClernon's

---

[1] There are two different versions of the e-mail letter that was purportedly sent by the plaintiff. In the version set forth above, McClernon allegedly wrote that a neighboring fire department had misappropriated funds, in an alternative version, the e-mail contends that the neighboring fire department "may have" misappropriated funds. For purposes of this motion only, the plaintiff has assumed that the version set forth in whole above, without the words "may have" was the version that plaintiff sent. See Plaintiff's Memorandum of Law in Opposition to Defendant's motion for Summary Judgment at p. 2, n. 1.

letter.  Because the meeting involved plaintiff's conduct, several board members asked that control of the meeting be given to the Vice President.  Plaintiff, however, refused to cede control of the meeting and thereafter the Board voted to appoint the Vice President as the Acting President.  The Acting President then excused plaintiff from the meeting, and discussed plaintiff's situation with the Board.  The Fire Chief of the North Corning Fire Department expressed his concerns to the Board, and following the meeting, the Board voted to suspend plaintiff from his position pending investigation into the circumstances surrounding the sending of the letter and the consequences resulting from the sending of the letter.

Upon learning of his suspension, plaintiff allegedly made personal telephone calls to members of the Board, in violation of the Boards standard operating procedures.  On October 24, as a result of this conduct, and his conduct at the October 22, 2003 meeting, plaintiff was charged by the Board with Inappropriate Behavior and Harassment.

On November 2, 2003 the Board of the Fire District held a general membership meeting to discuss McClernon's conduct.  At McClernon's request, the Board allowed the general membership, by a vote, to determine whether or not he should be disciplined, and, if discipline was to be imposed, the measure of discipline.  During the meeting, the membership agreed to conduct further investigation

into the letter, but imposed a suspension of approximately 2 months as punishment for McClernon's behavior at the October 22, 2003 meeting and his inappropriate behavior thereafter.

The Board continued its investigation of the McClernon letter and the effect, if any, it had on the Department's relations with its neighboring fire districts.  The Board received letters from the Chiefs of the Montour Falls and North Corning Fire Departments wherein both parties disputed the accuracy of the allegations made by McClernon.  The Chief of the Montour Falls Department noted that the fire truck which McClernon characterized as a truck that Montour Falls "did not need" was an integral piece of equipment that was often requested by neighboring fire departments, and that Beaver Dams had indeed requested the assistance of such a truck on at least 18 occasions between 2000 and 2002.  See Exhibit "D" to Defendant's Motion for Summary Judgment.  The Chief of the North Corning Fire Department described McClernon as a "great threat" to both his fire department and the Beaver Dams Fire Department, and threatened the possibility of legal action.  See Exhibit "E" to Defendant's Motion for Summary Judgment.  Both Departments specifically requested that McClernon not respond to calls for mutual aid.  The Board further learned that on some occasions following the sending of the McClernon letter, both Montour Falls and North Corning declined to ask Beaver Dams for aid in responding

to a call, and instead contacted other fire departments, despite the fact that Beaver Dams was the closest fire department.

As a result of the investigation, the Board decided to charge McClernon with Misconduct in connection with the sending of the McClernon letter.  On July 12, 2004, the Board met to hear and discuss the charges, and allow McClernon an opportunity to rebut the charges and call witnesses on his own behalf.  Following the hearing, the Board determined that the McClernon letter had had a "detrimental impact" on the Fire Department and its relations with its neighboring fire departments, and suspended McClernon for one year.  The Board further recommended to the membership that McClernon be expelled from the Department.  In May, 2005, the general membership of the Fire Department voted to expel the plaintiff.

<u>DISCUSSION</u>

I.   <u>Defendant's Motion for Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all inferences and ambiguities must be

resolved in favor of the party against whom summary judgment is sought. <u>R.B. Ventures, Ltd. v. Shane</u>, 112 F.3d 54 (2nd Cir. 1997). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. <u>Annis v. County of Westchester</u>, 136 F.3d 239, 247 (2nd Cir. 1998).

II.   <u>Plaintiff has failed to state a cause of action pursuant to 42 U.S.C. Section 1983</u>

42 U.S.C. § 1983 states in relevant part that "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C.A. § 1983 (1994). To state a claim under § 1983, a plaintiff "must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." <u>Dwares v. City of New York</u>, 985 F.2d 94, 98 (2d Cir. 1993) (citations omitted).

Assuming that the defendant was acting under color of state law when it suspended plaintiff for misconduct and recommended that

he be expelled from the Department as punishment for writing the McClernon letter, (see e.g. Pawlowski v. Big Tree Volunteer Fireman's Company, Inc., 12 A.D. 3d 1030 (N.Y.A.D. 4th Dept., 2004)(holding New York General Municipal Law § 209-l governs procedure for removal of volunteer firefighters on grounds of misconduct)), and further assuming that plaintiff enjoyed a cognizable interest in remaining a volunteer firefighter, (see e.g. Bigando v. Heitzman, 187 A.D.2d 917 (N.Y.A.D. 3rd Dept., 1992) (volunteer firefighters are considered public employees and thus entitled to due process), the court must determine whether or not the defendant deprived plaintiff of his right to freedom of speech by expelling him from the Department.

The First Amendment, inter alia, protects the right of public employees to speak-out without fear of reprisal on issues of public concern. Frank v. Relin , 1 F.3d 1317 (2nd Cir., 1993), cert. denied, 510 U.S. 1012 (1993).  However:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency in reaction to an employee's behavior.

Connick v. Myers, 461 U.S. 138, 147 (1983).  Moreover, even where an employee has spoken out on matters of public concern, a public employer may still take employment action against the employee if

the speech is likely to, or in fact has, disrupted the performance of governmental activities, or is detrimental to governmental efficiency. Cioffi v. Averill Park Central School District Board of Education, 444 F.3d 158, 162 (2nd Cir. 2006); Mandell v. County of Suffolk, 316 F.3d 368 (2nd Cir. 2003).

"In order to establish a First Amendment retaliation claim, [a] plaintiff[] must prove that: (1) [he] engaged in constitutionally protected speech because [he] spoke as [a] citizen[] on a matter of public concern; (2) [he] suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." Skehan v. Village of Mamaroneck, 465 F.3d 96, 106 (2nd Cir., 2006)(citing Gronowski v. Spencer, 424 F.3d 285, 292 (2d Cir.2005); Sheppard v. Beerman, 94 F.3d 823, 827 (2d Cir.1996)). Whether or not particular speech relates to a matter of public concern is "ordinarily a question of law decided on the whole record by taking into account the content, form, and context of the given statement." Melzer v. Board of Education, 336 F.3d 185, 196 (2nd Cir. 2003). If the plaintiff is able to establish a prima facie case of retaliation, the court must then determine whether or not the government employer was justified in taking action against the employee. Garcetti v. Cebballos, __ _ U.S. ____, 126 S.Ct. 1951, 1958 (2006). As stated by the court in McEvoy v. Spencer, 124 F.3d 92, 98 (2nd Cir. 1997):

> In each case, the ultimate question is whether
> the employee's right to speak is outweighed by

the public employer's interest in the effective operation of the workplace. Specifically, a court must assess the extent of the disruption caused by the employee's speech on workplace discipline, harmony among co-workers, working relationships, and the employee's job performance, and determine whether the disruption justifies the employer's attempt to stifle the employee's expressive activity.

In the instant case, I find that although the plaintiff's speech did touch upon matters of public concern, the defendant was justified in suspending and ultimately expelling the plaintiff from the Fire Department on grounds that the plaintiff's speech was damaging to the Department and detrimental to the functioning of the Department.

The purpose of plaintiff's letter, as evidenced by the content of the letter and his subsequent explanation of its purpose, was to complain that the Beaver Dams Volunteer Fire Department was not receiving adequate grants to ensure the safety of its volunteer firefighters and the community at large.  Such a topic is clearly within the public's interest and concern.

While the purpose of the letter was to attempt to bring to light disparities in funding between departments and a lack of adequate funding for the Beaver Dams Volunteer Fire Department, the allegations leveled in the letter: that one neighboring department received funding for a truck that it "didn't need" and that another neighboring department had misappropriated money, had a damaging effect on the Department.  The Chief of the Montour Falls

Department stated that McClernon's letter had "put a strain on inter organizational cooperation."  <u>See</u> Exhibit "D" to Defendant's Motion for Summary Judgment.  Indeed, the strain was evidenced by the fact that the Montour Falls Department requested that McClernon not respond to calls for aid from that Department, and that on some occasions, Montour Falls did not request aid from Beaver Dams despite the fact that Beaver Dams was the closest available fire department.

Similarly, the North Corning Fire Department asked that McClernon not respond to calls for aid made by North Corning.  The Chief of the North Corning Department stated that McClernon's letter was "damaging" to his department, and wrote that sending the letter, which in his opinion contained false accusations against his department was "the most unprofessional action any fire department officer could do to another BROTHER fire department." <u>See</u> Exhibit "E" to Defendant's Motion for Summary Judgment. (emphasis in the original).  North Corning considered McClernon to be a "threat" to its department and the Beaver Dams Department, and requested that McClernon either resign or be expelled.  <u>See</u> Exhibit "E" to Defendant's Motion for Summary Judgment.   Beaver Dams learned that following the sending of the McClernon letter, on some occasions, North Corning declined to request aid from Beaver Dams, despite the fact that Beaver Dams was the closest available fire department.

Because the McClernon letter had a damaging effect on Beaver Dams' relations with neighboring fire departments, Beaver Dams had a legitimate interest in punishing McClernon for the content of his speech. "If the harmful effects of the expression to the public workplace outweigh its benefits to the speaker-employee, then the employer is justified in taking adverse action against the employee in order to mitigate the negative effects." McEvoy, 124 F.3d 92, 98. In this case, the record reveals that the McClernon letter not only had a harmful effect on Beaver Dams relations with its neighboring fire departments, but also that the letter has a disruptive effect within the Beaver Dams Department. The writing of the letter and the reaction to it necessitated several meetings of the Board and the general membership, votes by the Board and the membership, involvement of attorneys, and a several-month long investigation. Because of the disruption both within and outside of the Beaver Dams Department, Beaver Dams was justified in allowing its membership to decide whether or not plaintiff should be expelled, and ultimately, was justified in expelling him from the Department. See e.g. Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2nd Cir. 1987)(fire department had interest in maintaining "esprit de corps" among members of volunteer fire department).

Finaly, even though the plaintiff's letter did touch on matters of public concern, the purpose of the letter was not to

expose public wrongdoing or corruption, but instead, served as a vehicle for McClernon to express his frustration that his department had again been passed over for receipt of grant money. Had plaintiff been interested in exposing corruption in the grant process or with respect to a particular fire department, he would have named those suspected of wrongdoing, and identified the allegedly wrongful acts.  Instead, however, McClernon simply stated his opinion that other, unnamed departments were unworthy of receiving grant money, and that his department was deserving of such aid.[2]  Claiming that unnamed departments received money they didn't deserve or that an unnamed department engaged in "misappropriation" of funds is more akin to "gossip" than it is to protected free speech on an issue of public concern.  <u>See</u> <u>e.g.</u> <u>De Los Santos v. City of New York</u>, 2007 WL 1001161, *8 (S.D.N.Y. April 3, 2007)(even "gossip of interest to the public" is generally not protected speech related to a public concern).  Accordingly, when weighing the importance of plaintiff's speech against the

---

[2] I note that as President of the Beaver Dams Department, plaintiff held a position of importance and responsibility within the organization, and accordingly, he was obligated to exercise more caution and discretion with respect to his speech then would be expected of a general member of the organization.  <u>McEvoy</u>, 124 F.3d 92, 98 ("The burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails").  Because of his position, plaintiff's accusations against neighboring fire departments carried more weight then the claims of a general member of a fire department, and accordingly evoked greater concern within the departments accused of wrongdoing.

disruption it caused, I find that the defendant was justified in taking employment action against the plaintiff.  I therefore find that plaintiff has failed to state a claim for violation of his First Amendment rights.  While his speech was generally directed to an issue of public concern, the specific allegations regarding the neighboring fire departments do not rise to the level of protected speech, and even if those allegations were protected under the First Amendment, plaintiff's right to make those allegations was outweighed by the defendant's interest in promoting good working relations with neighboring fire departments, and within its own Department.

CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          May 24, 2007